# 24-2237-cv

## United States Court of Appeals

*for the*

## Second Circuit

MARIA FERNANDA NADAL GANAN, As proposed co-administrator of the
Estate of GADEA GARCIA-MINAUR FONTA and the Estate of MENCIA
GARCIA-MINAUR FONTA, STEVEN N. GARFINKEL, In his capacity as
proposed co-administrator of the Estate of GADEA GARCA-MIAUR FONTA
and the Estate of MENCA GARCA-MIAUR FONTA,

*Plaintiffs-Appellants,*

— v. —

PA SCALE COMPANY OF FLORIDA,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR PLAINTIFFS-APPELLANTS

ELISA ALCABES
ALCABES LAW, PLLC
10 Roosevelt Avenue
Larchmont, New York 10538
(914) 720-5453

CYNTHIA M. DEVERS
MICHAEL S. MISKA
DEVERS MISKA LAW
One Bala Plaza, Suite 635
Bala Cynwyd, Pennsylvania 19004
(215) 714-4030

*Attorneys for Plaintiffs-Appellants*

 COUNSEL PRESS · (800) 4-APPEAL · (334151)

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUES PRESENTED ON APPEAL ........................ 2

STATEMENT OF THE CASE ............................................................... 3

FACTUAL BACKGROUND ................................................................. 9

    I.      The Parties and Aircraft ...................................................... 9

    II.    The Aircraft Accident ......................................................... 11

    III.   The Allianz Insurance Policy and Fraudulent Releases ...... 12

    IV.   The Spanish Criminal Proceeding ....................................... 13

SUMMARY OF THE ARGUMENT ..................................................... 14

STANDARD OF REVIEW ................................................................... 18

ARGUMENT ....................................................................................... 19

    I.      The District Court Erred in Failing to Afford Deference to
        Plaintiffs' Choice of Forum .................................................. 19

        A.    PA Scale Consented to Personal Jurisdiction before the
             District Court .............................................................. 19

        B.    Plaintiffs' Choice of Forum was Dictated by
             Legitimate Reasons .................................................... 21

        C.    Plaintiffs Demonstrated that Defendant has *Bona Fide*
             Connections with the U.S. and New York ................... 24

        D.    Defendant Engaged in Forum Shopping ...................... 25

    II.    The District Court Erred by Shifting the Burden Away from
        Defendant and Imposing it on Plaintiffs ............................... 26

    III.   The District Court Erred in Finding that Private and Public
        Interest Factors Render the U.S. an Inconvenient Forum ...... 27

        A.    Private Interest Factors Render the U.S. Convenient ...... 28

      B.     Public Interest Factors Render the U.S. Convenient ................34

IV.    The District Court Erred in Finding Spain is a Presently
Available Alternative Forum..............................................................35

V.     The District Court Erred in Denying Plaintiffs Discovery to
Address Defendant's Forum *Non Conveniens* Contentions................37

CONCLUSION ........................................................................................38

CERTIFICATE OF COMPLIANCE.......................................................40

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Abdullahi v. Pfizer, Inc.*,
  562 F.3d 163 (2d Cir. 2009) ...................................................................36

*Bank of American Corp. v. Lemgruber*,
  385 F. Supp. 2d 200 (S.D.N.Y. 2005) ................................... 26, 32, 36

*Caterpillar, Inc. v. Williams,*
  482 U.S. 392 (1987) .............................................................................31

*City of Almaty v. Ablyazov*,
  278 F. Supp. 3d 776 (S.D.N.Y. 2017) ................................................30

*DiRienzo v. Philip Services Corp.*,
  294 F.3d 21 (2d Cir. 2002) .......................................................... *passim*

*Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*,
  375 F. Supp. 2d 257 (S.D.N.Y. 2005) ................................................30

*Fasano v. Yu Yu*,
  921 F.3d 333 (2d Cir. 2019) ...............................................................18

*Galella v. Onassis*,
  487 F.2d 986 (2d Cir. 1973) ...............................................................37

*Goldfarb v. Channel One Russia*,
  442 F. Supp. 3d 649 (S.D.N.Y. 2020) ................................................20

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ........................................................... 26, 27, 28

*Iragorri v. United Technologies Corp.*,
  274 F.3d 65 (2d Cir. 2001) .......................................................... *passim*

*Kislin v. Dikker*,
  No. 14 CIV. 237 PGG JCF, 2015 WL 410246 (S.D.N.Y. Jan. 16, 2015) ...........20

*Kore Metals LLC v. Freshii Dev. LLC,*
  2021 CanLII 2896 (Can. One. Sup Ct. J.) ............................................ 28, 31

*La Seguridad de Centroamerica v. M/V Global Mariner*,
  No. 01 Civ. 0456, 2002 WL 530979 (S.D.N.Y., Apr. 9, 2002) .................... 24, 36

iii

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
   416 F.3d 146 (2d Cir. 2005) ........................................................ *passim*

*Overseas Nat'l Airways, Inc. v. Cargolux Airlines Int'l, S.A.*,
   712 F.2d 11 (2d Cir. 1983) ..................................................29

*Petra Systems v. Everest Nat'l Ins. Co.*,
   No. ST-18-cv-615, 2019 WL 1749510 (V.I. Super. Apr. 16, 2019) ..................37

*Reid-Walen v. Hansen*,
   933 F.2d 1390 (8th Cir. 1991) ..................................................29

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000) ..................................................27

## **Statutes**

28 U.S.C. § 1291 ..................................................................1

28 U.S.C. § 1332 ..................................................................1

14 C.F.R. § 47.3 ..............................................................4, 34

49 C.F.R. § 835.3 ..................................................................33

## **Rules**

Fed. R. Civ. P. 26(b)(1) .................................................... 18, 37

## **Other Authorities**

Andrew Filipour, *Forum Non Convneiens and the "Flat" Globe*,
   33 Emory Int'l L. Rev. 587 (2019).......................................30

Catherine Cervone, *Recalibrating the Forum Non Conveniens Analysis:*
   *The Effects of Technology on Transporting Evidence,*
   18 Nw. J. Tech. & Intell. Prop. 91 (2020) ...............................29

Christabel Narh, *Zooming Our Way Out of the Forum Non Conveniens*
   *Doctrine*, 123 Colum. L. Rev. 761 (2023) ...............................30

Scott Dodson, *Videoconferencing and Legal Doctrine*,
   51 Sw. L. Rev. 9 (2021) ..................................................31

## <u>JURISDICTIONAL STATEMENT</u>

This is an appeal from a final judgment issued by District Court Judge Alvin K. Hellerstein on August 2, 2024. The District Court had subject matter jurisdiction over this action (the "Action") under 28 U.S.C. § 1332 because there is diversity of citizenship between Plaintiffs-Appellants and Defendant-Appellee, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because: (i) on August 1, 2024, the District Court issued an opinion granting Defendant-Appellee's Motion to Dismiss on forum *non conveniens* grounds, SPA1-6 (the "Opinion"); (ii) on August 2, 2024, the District Court entered judgment dismissing the action, Dkt. 48 (the "Order"); and (iii) on August 21, 2024, Plaintiffs-Appellants filed a timely notice of appeal, A294-295.[1]

---

[1] Citations to "SPA __" refer to the Special Appendix. Citations to "A __" refer to the Joint Appendix. Citations to "Dkt. __" refer to documents available on the District Court docket that are not included in the Special Appendix or Joint Appendix.

## <u>STATEMENT OF ISSUES PRESENTED ON APPEAL</u>

1.      Whether the District Court erred in dismissing the Action on *forum non conveniens* grounds where Plaintiffs demonstrated that their choice of forum was dictated by legitimate reasons, including Defendant's amenability to personal jurisdiction, and was entitled to deference.

2.      Whether the District Court erred by imposing on Plaintiffs the burden of demonstrating that their choice of a U.S. forum was convenient rather than requiring Defendant to show that the U.S. was an inconvenient, oppressive or vexatious forum.

3.      Whether the District Court erred in finding that private and public interest factors rendered the U.S. inconvenient where PA Scale's operations are based in the U.S., PA Scale's key witnesses are amenable to service of process in New York, English is the universal language of aviation, and the U.S. has a profound interest in policing its own corporations, particularly those that own and operate FAA-registered aircraft.

4.      Whether the District Court erred by finding that Spain is a presently available forum.

5.      Whether the District Court erred in denying Plaintiffs limited discovery to address Defendant's contention that the U.S. is a vexatious, oppressive, and inconvenient forum.

## STATEMENT OF THE CASE

This case arises out of a deadly accident involving a King Air E90 corporate aircraft (the "Aircraft") owned by a U.S. corporation, Defendant PA Scale Company of Florida ("PA Scale"), and PA Scale's attempts to evade its obligations as the Aircraft owner under U.S. law. Twelve-year old twin girls, Gadea and Mencía García-Miñaur Fonta (the "Twins"), and their mother, María Fernanda Fonta Nadal ("Ms. Fonta") were killed in the accident, because the Aircraft owned and operated by PA Scale was unairworthy and its pilot, PA Scale CEO Rafael Malo, was unqualified to fly it. The Twins and Ms. Fonta were the granddaughters and daughter, respectively, of Plaintiff-Appellant María Fernanda Nadal Gañán ("Mrs. Nadal").

Plaintiffs filed this Action in the District Court for legitimate reasons "that the law recognizes as valid." *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001). Under this Court's jurisprudence, the District Court should have afforded deference to Plaintiffs' choice of forum, notwithstanding their status as foreign citizens. As a threshold matter, PA Scale was subject to the District Court's personal jurisdiction, a significant factor in the forum *non conveniens* analysis. *Id*. at 73. Moreover, PA Scale has a deep, abiding connection to the U.S. and no connection to Spain. The following factors are undisputed and significant,

3

and most of which was conceded by PA Scale's current CEO, Ana Marta Malo, in paragraph 13 of her declaration at A129:

- PA Scale is incorporated in the U.S. PA Scale has no offices in Spain.

- PA Scale has operated in the U.S. for more than two decades. PA Scale has no operations in Spain.

- PA Scale was headquartered in New York when the Action was filed and conceded the District Court's personal jurisdiction. PA Scale has never appeared in Spain in legal proceedings that are still underway regarding the Aircraft accident.

- PA Scale has assets in the U.S., rendering any judgment here more likely enforceable. PA Scale has identified no assets in Spain.

- PA Scale purchased the Aircraft in the U.S. and registered it with the Federal Aviation Administration ("FAA"). PA Scale's CEO, Rafael Malo, inexplicably transported the Aircraft to Spain but kept its FAA registration and never registered it in Spain.

- PA Scale was required to maintain U.S. ownership of the Aircraft while it was registered with the FAA and maintain the Aircraft in accordance with U.S. law and FAA regulations. 14 C.F.R. § 47.3. PA Scale never explained how it complied with U.S. laws and regulations while operating the Aircraft in Spain.

- PA Scale had a single employee at the time of the accident, and he is a U.S. citizen residing in Florida. PA Scale´s current CEO has a business address in the U.S., and PA Scale's sole director resides in the U.S. PA Scale has identified no other employees.

In short, PA Scale is a U.S. corporation with a U.S. headquarters that continues to take advantage of U.S. law and concedes that it is subject to the jurisidiction of this Court. PA Scale took advantage of U.S. laws and regulations to own and operate its Corporate Aircraft wherever it was flown, whether in Spain or any other country. By contrast, PA Scale has little to no connection to Spain and has never subjected itself to Spanish law. Indeed, PA Scale has been notably absent from the legal proceedings that have been underway in Spain for nearly eight years relating to the accident. Throughout this time, PA Scale has hidden behind a Spanish company owned by its current CEO and has never taken responsibility for the horrific accident that took the lives of Plaintiffs' decedents.

PA Scale failed miserably in its obligation to ensure that its pilot was properly trained and certified and that its Corporate Aircraft was maintained and operated in compliance with applicable regulations. Because of PA Scale's extensive connections to the U.S. and its tenuous connections to Spain, the Honorable Alvin K. Hellerstein erred in his forum *non conveniens* analysis when he found that the U.S. was an inconvenient venue and that the case should proceed in Spain. The

District Court failed to give deference to Plaintiffs' choice of venue and failed to enforce Defendant's burden to show that litigating in a U.S. forum was vexatious, oppressive, or inconvenient. The accident occurring in Spain was entirely fortuitous. Every fact pertaining to PA Scale indicates that its principal connection is with the U.S., where it was formed and remains incorporated to this day.

Moreover, the District Court erred in considering the private and public interest factors, which weigh in favor of the U.S. over Spain. As for private factors, Defendant's key witness, David Lucas, is a U.S. citizen and resident, and Defendant's CEO, Ana Marta Malo, has submitted to the Court's jurisdiction - factors the District Court overlooked. The Court also did not consider that English is the official language of aviation. Thus, any relevant manuals, logbooks, engineering reports, or other technical documents related to operation and maintenance of the Aircraft are in English and would have to be translated into Spanish, which will cost the parties an extraordinary expense. In addition, the certified documentary evidence of the purchase and ownership of the Aircraft is held here in the U.S. by the FAA. The Court also did not consider the applicable Federal Aviation Regulations that are binding on pilots of U.S. owned aircraft, such as the Aircraft at issue in this case. Further, the Court did not consider the advances in modern technology which will make it cost effective for witnesses to appear at trial.

6

As for public interest factors, this case pertains to PA Scale's conduct as a U.S. company that owned a U.S. registered aircraft and turned it into a death trap. This Court has a profound interest in enforcing the laws and regulations of the U.S. that are applicable to the Aircraft, PA Scale, and PA Scale's CEO.

The District Court also erroneously determined that Spain was an "available forum" when it is not, as civil litigation cannot proceed in Spain while the criminal investigation remains pending and will last indefinitely.

At a minimum, the District Court should have granted Plaintiffs discovery to establish that PA Scale's connections to Spain are minimal compared to its extensive connections to the U.S., and that venue in this Court is not oppressive, vexatious, or inconvenient. In this regard, it is noteworthy that PA Scale hid behind a sham rental agreement and allowed its CEO and aircraft insurer to fraudulently induce Plaintiff Mrs. Nadal into a settlement agreement for grossly inadequate consideration for the accident that took the life of Plaintiff's daughter and two grandchildren. Plaintiffs should at least be permitted to ask PA Scale why it allowed a Spanish company to pretend to be the owner of the Aircraft and to learn what happened to the 11,500,000€ insurance policy under which the Aircraft was insured.

The District Court erred in granting PA Scale's motion to dismiss under the doctrine of forum *non conveniens*. SPA1-6 (the "Opinion" or "Op."). The Order should be vacated and the Action sent back to the District Court with instructions to

proceed to trial or, in the alternative, to permit Plaintiffs to take discovery to establish that the District Court is an appropriate venue.

## FACTUAL BACKGROUND

### I.    The Parties and Aircraft

At the time of the accident, Plaintiff-Appellant,[2] Ms. Fonta, was dating Rafael Malo, PA Scale's CEO and the pilot of the Aircraft. Plaintiff-Appellant Mrs. Nadal's daughter and twin granddaughters died horrific deaths in the crash.[3] Mrs. Nadal witnessed the crash virtually.

PA Scale is a U.S. company. A128-A129 (Malo Decl. at ¶9).  It purports to engage in real estate. However, aside from skeletal annual reports, there is no public information available regarding this entity. The only other PA Scale employee at the time of the accident was its then-president, David Lucas, a U.S. citizen and Florida resident. A154 (Ann. Rept 2016). Lucas was the "Director, President, Secretary and Treasurer of PA Scale," who "resided in the U.S. and "was responsible for the

---

[2] Plaintiff-Appellant Mrs. Nadal, is the mother of Ms. Fonta and grandmother of the Twins.  She asserts claims in this Action both individually and as a representative of the Twins' Estates. A8-126 (Am. Cplt.).  Plaintiff-Appellant Mr. Garfinkel, the proposed co-administrator for the Twins' Estates, resides in New York and is a certified public accountant, retired Federal Bureau of Investigation Special Agent and former Senior Vice President of Global Investigations for Citigroup. Together with Mrs. Nadal, Mr. Garfinkel commenced estate proceedings for the Twins in New York, and files have been established for each Twin.

[3] To the extent Plaintiffs achieve a recovery on behalf of the Twins, such recovery would be subject to distribution among the potential heirs/beneficiaries as approved by the New York Surrogate's Court.

administration of PA Scale." A127-128 (Malo Decl. at ¶4). PA Scale's current CEO is Ana Marta Malo ("Ms. Malo"), Rafael Malo's daughter. A127 (Malo Decl. at ¶2). At the time Plaintiffs commenced this Action, Ms. Malo and PA Scale's sole director, Yasmin Sabet, maintained a business address for PA Scale in New York. A160-161 (Ann. Rept. 2022, 2023). Ostensibly, PA Scale purchased the Corporate Aircraft so its CEO, Rafael Malo (also the pilot), could advance PA Scale's U.S.-based business operations.

PA Scale's Corporate Aircraft was a U.S. aircraft owned by a U.S. company. A46; A192-193. It was designed and manufactured in the U.S. by U.S.-based Beechcraft Corporation (n/k/a Textron Aviation, Inc.). The Aircraft was sold to PA Scale in the U.S., registered with the FAA in the U.S., and certified in the U.S. *Id.* Moreover, PA Scale managed the Corporate Aircraft from the U.S., and the Aircraft's instructions for continuing airworthiness were disseminated from its U.S. manufacturers.

As PA Scale has admitted in a sworn declaration, it does not: (1) transact business in Spain; (2) derive income from Spain; (3) solicit business in Spain; (4) obtain authorization to conduct business in Spain; (5) have any employees in Spain; (6) have any business-related meetings in Spain; (7) appoint a registered agent in Spain; (8) own or lease any offices or property in Spain; (9) advertise or engage in marketing activities directed toward Spain or citizens of Spain; (10) train,

10

supervise, control or manage any employees in Spain; (11) pay taxes in Spain; or (12) have any business involvement or business in Spain. A129-131 (Malo Decl. at ¶13).

Defendant never disclosed to Plaintiffs why Malo was using the Corporate Aircraft in Spain, what business purpose the Aircraft served, or how PA Scale monitored its ongoing obligations to maintain and operate the Aircraft in compliance with FAA regulations. Malo's use of the Corporate Aircraft in Spain remains a mystery.

## II.   **The Aircraft Accident**

The accident took place on December 4, 2016. A complete description of the accident sequence appears in the Amended Complaint. A9-10 at ¶¶ 7-9. The accident was the tragic consequence of a decision by Mr. Malo to take off in a terrible storm with a broken weather radar, which was part of the required minimum equipment for an airworthy flight, all lacking the appropriate certifications, training and skill to pilot the Aircraft. A46-47.

Following the accident, an investigation ensued and on or about July 2, 2019, an investigation report was issued (the "Official Report"). A39-102.  The Official Report concluded that Rafael Malo lacked a proper "type rating" and was therefore "piloting an aircraft that he was not authorized to pilot." A93, A95. The Official Report further concluded that the PA Scale Aircraft itself "was not airworthy" at the

11

time of the accident and that Rafael Malo, who was responsible for its airworthiness, "should not have operated the aircraft." *Id*.

## III.   The Allianz Insurance Policy and Fraudulent Releases

The Aircraft was insured under an 11,500,000€ aircraft liability policy. A103-126 (Aircraft Policy original), A164-189 (Aircraft Policy English translation). In 2017, less than a year after the accident, PA Scale's aircraft insurer, Allianz Compañía de Seguros y Reaseguros, S.A ("Allianz"), with the acquiescence of PA Scale's CEO Ms. Malo, induced Mrs. Nadal to sign a release for the wrongful death of Ms. Fonta in return for a *de minimus* payment of 56,000€. PA Scale was not a signatory or party to this release. The release makes no mention of the Twins. A216-219 (Fraudulent Release).

On the face of the release, Allianz deliberately misrepresented to Mrs. Nadal that the owner of the Corporate Aircraft was a Spanish company called Vazquez Krasnow. A216, A218. As Allianz and Vazquez Krasnow knew at the time, PA Scale was the Aircraft's exclusive owner. Allianz admits to misleading Mrs. Nadal with respect to the Aircraft's ownership when it negotiated and drafted the fraudulent release. A291-293 (Allianz Decl. at ¶10-11).[4]

---

[4] PA Scale contended that it rented the Aircraft to Vazquez Krasnow, but the rental agreement was a sham, unsigned, unauthenticated and riddled with errors. A162 (Rental Agreement). As the District Court correctly noted, PA Scale's "'sham' rental agreement" never transferred ownership of the Aircraft to Vazquez Krasnow, and PA Scale "always remained the owner." SPA2. To the extent any dispute arose under

**IV.**   **The Spanish Criminal Proceeding**

Since 2016, a criminal proceeding has been underway in Spain regarding the accident. Under Spanish law, any civil action dealing with the same facts is suspended until the criminal process has been completed, which has not been reached. A264-265 (Martínez Decl.).

---

the purported rental agreement, PA Scale agreed to submit to the jurisdiction of a U.S. court. *Id.*

## SUMMARY OF THE ARGUMENT

The District Court erred in dismissing this Action against a U.S. corporation on forum *non conveniens* grounds. Plaintiffs demonstrated legitimate reasons why they chose to sue PA Scale in the District Court. PA Scale exists only because of U.S. law and is subject to U.S. law. PA Scale has assets in the U.S. The District Court has personal jurisdiction over PA Scale. Key witnesses and documentary evidence are readily available in the U.S. Aviation communications, maintenance instructions and logs take place in English. PA Scale's operations were run by U.S. citizen and resident David Lucas, PA Scale's Director, President, Secretary, and Treasurer at the time of the accident. It was completely fortuitous where the aircraft accident took place.

Moreover, PA Scale has no presence and no apparent assets in Spain. A129-131 (Malo Decl. at ¶13). It does no business and does not pay taxes in Spain. PA Scale has no operations, employees or clients in Spain. *Id.* PA Scale never appeared in any proceedings in Spain concerning the accident. *Id.* PA Scale did not contest the District Court's jurisdiction. PA Scale did not meet its burden of showing that litigation in the U.S. would be oppressive, vexatious or inconvenient. In fact, it is more convenient for PA Scale to appear in a U.S. tribunal than one in a foreign country. PA Scale should be held to account for its misconduct in its home forum of the U.S.

The District Court erred on numerous factual matters. The Court erred in finding that Plaintiffs' claims involve "PA Scale's operations in Spain." SPA4 (Opinion). PA Scale declared that it transacted no business in Spain, as Ms. Malo admitted in her declaration. A129 (Malo Decl. at ¶13). PA Scale never explained its use of the Aircraft in the single incident in Spain that killed Plaintiffs' decedents. The Court also erred by accepting Defendant's contention that the Aircraft was leased to a Spanish company, when this was sharply disputed by Plaintiffs, unsupported by a document found to be a "sham" by the District Court, and contradicted by the Court's own statement that "PA Scale always remained the owner of the aircraft." SPA2. Moreover, PA Scale has hidden behind a Spanish company, Vazquez Krasnow, which deceptively took the blame for owning the Aircraft all under the terms of a rental agreement the District Court described as a "sham." SPA2. PA Scale never appeared in the criminal investigation in Spain after the accident occurred further demonstrating the lack of connections it has to Spain.

The Court also improperly found that documents and testimony could require translation from Spanish into English, ignoring the fact that aviation documents are written in English and all aviation communications proceed in English. SPA6. Of course, Plaintiffs did not even have the benefit of discovery to show in the record this fact with the aircraft maintenance logbooks or witnesses.

The District Court also erred on matters of law. The District Court misapplied the burden of proof by imposing upon Plaintiffs the burden of demonstrating that the U.S. is convenient. The Court never asked PA Scale to meet its burden of showing that its home forum and principal place of business – the U.S.– is inconvenient, vexatious or oppressive. The Court also erred by assuming that the Action should be litigated where the accident took place when there was no evidence as to why the U.S. Aircraft was being used in Spain. Moreover, in assessing the convenience of the U.S. as a forum, the Court erred when it omitted any reference to key witness David Lucas, PA Scale's former president who resides in Florida, and key witness Ms. Malo, PA Scale's CEO who has submitted to the jurisdiction of the District Court. In addition, the Court disregarded case law denying forum *non conveniens* arguments given the availability of technology which permits parties easily to take discovery across state and international borders.

In addition, private and public interests all point to allowing the case to proceed in the U.S. The action centers on PA Scale's conduct as a U.S. corporation owning a U.S. Aircraft, and PA Scale's two key corporate representatives are amenable to service of process in the U.S. The witnesses who will be called at trial to discuss the airworthiness of the aircraft, U.S. regulations and its cerfication speak English, are located in the U.S. and will need a translator to testify before a Spanish tribunal. Additionally, Plaintiffs' choice of U.S. aviation counsel should be given

deference and the cost of translating documents and testimony will make this matter economically impractical. The District Court and the U.S. also have an interest in enforcing its law and regualations over a U.S. corporation and U.S. aircraft.

The Court also erred in finding that Spain is a presently available alternative forum. Civil claims are stayed during the pendency of the Spanish criminal proceedings that have been underway for several years. A260, A264-265 (Martínez Decl. at ¶¶ 12, 35-36). There exists an indefinite delay in Plaintiffs' ability to commence a civil case against PA Scale in Spain. In any event, this factor is not determinative because PA Scale failed to meet its burden of establishing that litigation in the U.S. would be inconvenient, oppressive or vexatious.

The decision by the District Court should be reversed so this case can proceed in the District Court. In the alternative, the case should be remanded to the District Court with instructions to grant Plaintiffs discovery so that they can create a record demonstrating that PA Scale's operations and activities in Florida and New York render the U.S. a convenient forum in which to adjudicate Plaintiffs' claims.

## STANDARD OF REVIEW

The Second Circuit reviews forum *non conveniens* decisions for clear abuse of discretion. *Iragorri*, 274 F.3d at 72. A court must consider "the totality of circumstances supporting a plaintiff's choice of forum." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005) (citing *Iragorri*). A district court abuses its discretion when its forum *non conveniens* decision "rests on an error of law or on a clearly erroneous finding of fact" or "fails to consider all the relevant factors or unreasonably balances those factors." *Norex*, 416 F.3d at 153. Factual findings are reviewed for clear error, legal conclusions are reviewed *de nevo*. *Fasano v. Yu Yu*, 921 F.3d 333 (2d Cir. 2019). Further, this Court may find that issues of fact preclude a decision on forum *non conveniens* and, thus, that discovery is warranted. Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.").

**ARGUMENT**

## I. The District Court Erred in Failing to Afford Deference to Plaintiffs' Choice of Forum

It is well-settled in this Circuit that a plaintiff's choice of forum should be afforded "a strong favorable presumption." *DiRienzo v. Philip Services Corp.,* 294 F.3d 21, 28 (2d Cir. 2002). In declining to grant any deference to Plaintiffs' choice of forum, the District Court: (a) ignored Defendant's submission to the District Court's personal jurisdiction; (b) failed to examine Plaintiffs' legitimate reasons for its choice of forum; (c) misconstrued the facts relevant to PA Scale's purported connection to Spain; (d) found no *bona fide* connection between the U.S. and PA Scale, which only has offices in the U.S. where it is incorporated; and (e) disregarded Defendant's forum shopping.

### A. PA Scale Consented to Personal Jurisdiction before the District Court

A key factor in determining whether the plaintiff's choice of forum should be granted deference is defendant's amenability to suit. A plaintiff's decision to litigate where defendant is amenable to suit "is properly viewed as a strong indicator that convenience, not tactical harassment of an adversary, informed its decision to

sue outside its home forum." *Norex*, 416 F.3d at 155. The District Court's opinion does not adequately consider the fact that PA scale conceded personl jurisdiction.

Courts in this Circuit routinely consider whether there was a challenge to personal jurisdiction when addressing a forum *non conveniens* challenge. *See Norex*, 416 F.3d at 155-56 (upholding plaintiff's choice of forum where it appeared doubtful that plaintiff could have perfected jurisdiction over defendants in home forum); *accord Goldfarb v. Channel One Russia*, 442 F. Supp. 3d 649, 657-58 (S.D.N.Y. 2020) (upholding non-resident of New York's choice of forum where defendant operated in New York and was subject to personal jurisdiction); *Kislin v. Dikker*, No. 14 CIV. 237 PGG JCF, 2015 WL 410246, at *7 (S.D.N.Y. Jan. 16, 2015) (denying challenge to forum where defendant "has not moved to dismiss on personal jurisdiction grounds, indicating his amenability to suit in this forum").

As this Court has found, when a plaintiff chooses to sue where the court may exercise personal jurisdiction over defendant, it makes "little sense to withhold deference for the plaintiff's choice." *Iraggori*, 274 F.3d at 73. As *Iragorri* holds, "[a] plaintiff should not be compelled to mount a suit in a district where she cannot be sure of perfecting jurisdiction over the defendant…." *Id.*; *accord DiRienzo*, 294 F.3d at 28 (court defers to plaintiffs' choice of forum even though many are non-residents).

The District Court erroneously did not assess Plaintiffs' choice of this forum to ensure PA Scale's amenability to suit. It was incorporated in the U.S. and had a headquarters in New York. It had assets in the U.S. Moreover, PA Scale gave no indication that it would voluntarily appear in Spain, particularly insofar as PA Scale ***never*** appeared in the criminal proceeding in Spain relating to the accident. In addition, PA Scale and its aircraft insurer, Allianz, hid the true aircraft owner's identity (PA Scale) from Mrs. Nadal when Allianz fraudulently induced her to sign a release of claims in return for a *de minimis* payment for the death of her daughter. There never was a release signed on behalf of the Twins' Estates.

### B. Plaintiffs' Choice of Forum was Dictated by Legitimate Reasons

The more a plaintiff's choice of forum is "dictated by reasons that the law recognizes as ***valid***, the greater the deference that will be given" to that choice. *Iragorri*, 274 F.3d at 71-72 (emphasis added). A district court errs when it gives controlling weight to an adverse presumption against the plaintiff without undertaking a "comparative analysis of convenience and forum shopping." *Norex*, 416 F.3d at 154-57, 162 (reversing forum *non conveniens* dismissal where district court failed to consider foreign plaintiff's proper motives and absence of forum shopping).

Plaintiffs' choice of the District Court was fully supported by the facts. *See DiRienzo*, 294 F.3d at 28 ("no evidence suggests [plaintiffs] had an improper motive

in bringing suit" in the Southern District of New York). The District Court offered no analysis of whether Plaintiffs engaged in forum shopping. There is nothing in the record that suggests any such improper motive.

Plaintiffs chose the District Court as the forum in which to commence the Action because PA Scale is subject to personal jurisdiction in New York. PA Scale had two principal places of business in the U.S., none in Spain. PA Scale maintained an office in the U.S. from which it managed the Corporate Aircraft but had no such office in Spain. In addition, PA Scale's president and only employee at the time of the accident, David Lucas, resided in the U.S., not Spain, and PA Scale's current CEO had a business address in New York. Further, all written instructions and oral aviation communications proceed in English, not Spanish, thereby alleviating the need to undertake translations of any documents or testimony relating to the crash that may be presented to a Spanish tribunal.

The District Court never analyzed Plaintiffs' reasons for commencing the Action in this forum. Instead, the Court quickly determined that Plaintiffs' choice deserved no deference and pointed exclusively to the accident itself. The Court paid no attention to the compelling connections between PA Scale and the U.S., the absence of such connections between PA Scale and Spain, and the legitimate reasons for Plaintiffs' choice of forum. This was clear error. *Norex*, 416 F. 3d at 155 (where a court "references a single factor, geographic convenience, to the exclusion of

22

others more supportive of plaintiff's forum choice, ***a legal concern arises*** as to whether its exercise of discretion was properly directed to the application of *Iragorri's* sliding scale") (emphasis added).

The District Court also misconstrued the record by stating that Plaintiffs' claims involve "PA Scale's operations in Spain." SPA4 (Opinion). There is no evidence of any operations by PA Scale in Spain. On the contrary, PA Scale's CEO admitted under oath that PA Scale had no operations in Spain. A129 (Malo Decl. at ¶13). The only facts mentioned by Defendant pertain to PA Scale's operation of the Aircraft in Spain - not to its business or use of the Corporate Aircraft. The reasons for PA Scale's use of the Aircraft in Spain are shrouded in mystery.

Indeed, PA Scale never explained why Malo operated the Aircraft in Spain, what business purpose it served or why PA Scale so clearly avoided appearing in any Spanish legal proceedings pertaining to the accident. The District Court should have asked these questions. It did not. On the contrary, the Court assumed facts contrary to the record when it stated that PA Scale had operations in Spain, never heard argument, and did not allow for the development of a factual record to shine light on these issues. SPA4

Further, the fact that PA Scale will submit to jurisdiction in Spain in the wake of the District Court's order "does not alter the fact that plaintiff's own choice of forum was motivated by genuine jurisdictional convenience and, as such, merits

'*substantial deference*' on any sliding-scale analysis." *Norex*, 416 F.3d at 156 (emphasis added); *accord DiRienzo*, 294 F.3d at 28.

### C. Plaintiffs Demonstrated that Defendant has *Bona Fide* Connections with the U.S. and New York

It is unclear why the Court found no *bona fide* connection between Defendant and "this forum" in light of the Court's certainty that there was proper jurisdiction and its recognition that PA Scale was incorporated in the U.S. and the Aircraft held an FAA registration. SPA4 This Circuit dictates that "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the **United States**, the more difficult it will be for the defendant to gain dismissal for forum *non conveniens*." *Iragorri*, 274 F.3d at 72 (emphasis added). Here, the District Court acknowledged that PA Scale was properly before the Court. Nonetheless, the Court stated that Plaintiffs pointed to no "*bona fide*" connections of PA Scale or the Action "to this forum." SPA4.

The Court's analysis does not satisfy the Second Circuit's rigorous test for denying deference to a plaintiff's choice of forum. *See DiRienzo*, 294 F.3d at 28 (plaintiffs demonstrated "a 'bona fide' connection to the **United States**" and thus a "valid reason" for litigating in federal court where they sought to enforce U.S. securities laws) (emphasis added); *accord La Seguridad de Centroamerica v. M/V Global Mariner*, No. 01 Civ. 0456, 2002 WL 530979, at *5-*6 (S.D.N.Y., Apr. 9,

24

2002) (comparing the United States, the United Kingdom and Venezuela as forums, Court finds defendants failed to show plaintiffs' chosen forum to be genuinely inconvenient).

### D. Defendant Engaged in Forum Shopping

As *Iragorri* and its progeny dictate, Defendant's efforts to avoid this forum are subject to heightened scrutiny. Thus, this Court "counsels caution" in evaluating a forum *non conveniens* motion where, as here, a defendant's "claims of inconvenience raise questions as to its underlying motives." *DiRienzo,* 294 F.3d at 29.

The Court in *Iragorri* highlighted a situation in which a defendant moves to dismiss, not because the forum is inconvenient, but for forum-shopping reasons. Thus, as *Iragorri* instructs, District Courts should "arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum." *Iragorri*, 274 F.3d at 75. In this regard, an action should be dismissed only if defendant shows the chosen forum to be "genuinely inconvenient." *Id*. at 74.

PA Scale conceded that it was incorporated in the U.S., owned the Aircraft, maintained offices in the U.S. and was subject to personal jurisdiction (A129-131). PA Scale only offered a single fortuitous reason for dismissing the case to Spain – the fact that the accident occurred there. PA Scale admitted that its insurer induced

Mrs. Nadal to believe that the Aircraft was owned by a Spanish company through the sham rental agreement. This was an apparent attempt to evade liability in the U.S. and enjoy preferential damages law in Spain.

PA Scale's motion to dismiss on forum *non conveniens* grounds wreaks of forum shopping. The District Court erred when it made no mention of this factor in its analysis.

## II. The District Court Erred by Shifting the Burden Away from Defendant and Imposing it on Plaintiffs

The District Court failed to impose on PA Scale the burden of demonstrating that the U.S. is an inconvenient forum. It is well-settled in this Circuit that a court should assume a plaintiff's choice of forum will stand unless the **defendant** can demonstrate that reasons exist to afford it less deference. *DiRienzo,* 294 F.3d at 28 (citing *Iragorri*, 274 F.3d at 70-71). A defendant's burden with respect to the forum *non conveniens* factors "is always high." *Bank of American Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 234 (S.D.N.Y. 2005) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)(emphasis added). Plaintiffs should not be deprived of their choice of forum except upon **defendant's** "clear showing that a trial in the United States would be so 'oppressive' and 'vexatious' to them as to be out of all proportion to plaintiffs' convenience." *DiRienzo,* 294 F.3d at 30. Unless the balance of private interest factors strongly favors the defendant, the plaintiff's choice of forum should "rarely be disturbed." *Iragorri,* 274 F.3d at 70.

Here, the District Court improperly imposed on Plaintiffs the burden of showing that the U.S. is convenient. This was plain error as evidenced by the District Court's own cited authority. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000) ("In order to be granted dismissal based on forum *non conveniens*, the **defendants** bear the burden of establishing that the *Gilbert* factors 'tilt[ ] strongly in favor of trial in the foreign forum.'").

The District Court acknowledged that Defendant was incorporated in the U.S., did not contest personal jurisdiction and listed New York as a principal place of business in a public filing. Nonetheless, the District Court shifted the burden to Plaintiffs to prove that their forum selection was proper. SPA4 (Opinion). As noted above, Plaintiffs demonstrated legitimate reasons for their choice of forum and showed Defendant's *bona fide* connection to the U.S and New York. The Court erred when it relieved Defendant of its burden of supporting its forum challenge and instead placed the burden of proof on the Plaintiffs.

## III. The District Court Erred in Finding that Private and Public Interest Factors Render the U.S. an Inconvenient Forum

The District Court misconstrued the private and public interest factors at issue in this Action. Defendant pointed solely to the accident location to support its contention that private and public interest factors favor holding this proceeding in Spain. However, the details of the accident are not at issue here. The parties agree that the PA Scale Aircraft crashed and that everyone inside was killed. At issue here

27

is the **conduct of PA Scale**, a U.S. company with U.S. records, U.S. offices, and management located in the U.S. private and public interest factors warrant the continuation of civil proceedings in the District Court.

### A.    Private Interest Factors Render the U.S. Convenient

The private interest factors to be assessed include: (1) ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of willing witnesses' attendance; (4) if relevant, the possibility of a view of premises; and (5) all other factors that might make the trial quicker or less expensive. *DiRienzo*, 294 F.3d at 29-30 (citing *Gilbert*, 330 U.S. at 508).

As a threshold matter, the District Court did not consider the availability of technology to the parties, and its effect on its forum *non conveniens* analysis. In a post-COVID world especially, videoconference platforms have served to ease burdens on courts, and have changed – or even partly eviscerated – the doctrine of forum *non conveniens*. Certainly, it alters the public and private interest analysis appropriate in cases involving foreign parties and aviation accidents.

One court asks, whether "[i]n the age of Zoom, is any forum more non conveniens than another? Has a venerable doctrine now gone the way of the VCR player [. . .]?" *Kore Metals LLC v. Freshii Dev. LLC,* 2021 CanLII 2896, para 1 (Can. One. Sup Ct. J.) (noting the impact of videoconferencing on Canada's forum *non conveniens* doctrine). That Court, while Canadian, further states:

28

It is by now an obvious point, but it bears repeating that a digital-based adjudicative system with a videoconference hearing is as distant and as nearby as the World Wide Web. With this in mind, the considerable legal learning that has gone into contests of competing forums over the years is now all but obsolete. Judges cannot say forum non conveniens we hardly knew you, but they can now say farewell to what was until recently a familiar doctrinal presence in the courthouse.

And what is true for forum non conveniens is equally true for the access to justice approach to the arbitration question. Chicago and Toronto are all on the same cyber street. They are accessed in the identical way with a voice command or the click of a finger. No one venue is more or less unfair or impractical than another.

*Id.* at ¶¶ 31, 32.

The same considerations apply in U.S. courts given technological advancement and use of videoconferencing. The U.S. Court of Appeals for the Eighth Circuit has noted, "[t]he time and expense of obtaining the presence or testimony of foreign witnesses is greatly reduced by commonplace modes of communication and travel." *Reid-Walen v. Hansen,* 933 F.2d 1390, 1396 (8th Cir. 1991); *see* Catherine Cervone, *Recalibrating the Forum Non Conveniens Analysis: The Effects of Technology on Transporting Evidence,* 18 Nw. J. Tech. & Intell. Prop. 91 (2020). In fact, Judge Oakes on the U.S. Court of Appeals for the Second Circuit suggested, "[t]he entire doctrine of forum non conveniens should be reexamined in light of the transportation revolution." *Overseas Nat'l Airways, Inc. v. Cargolux Airlines Int'l, S.A.,* 712 F.2d 11, 14 (2d Cir. 1983) (Oakes, J., concurring).

Some Courts in New York have even recognized how technology has altered the forum *non conveniens* private interest factor analysis. *See City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 795 (S.D.N.Y. 2017) ("[P]rejudice flowing from the inability of forcing parties to travel to the appointed forum may often be substantially ameliorated—or at least mitigated—by, for example, testimony by videoconference. . . ."); *Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.,* 375 F. Supp. 2d 257, 265 (S.D.N.Y. 2005) ("In this day and age of rapid transportation and instant communications, the convenience of immediate physical proximity to documents, testimony, and other proof has become of less consequence to a forum *non conveniens* analysis. . . ."). According to Cervone's article, in an empirical study of forum *non conveniens* cases where foreign plaintiffs successfully overcame motions to dismiss pursuant to this doctrine, Andrew Filipour found that the District Court for the Southern District of New York frequently recognized the effects of technology on the private interest factors, with four of the five cases in his data set from the Southern District Court explicitly referencing the importance of technological advancements. Cervone, *supra* (citing Andrew Filipour, *Forum Non Convneiens and the "Flat" Globe,* 33 Emory Int'l L. Rev. 587 (2019)); *see* Christabel Narh, *Zooming Our Way Out of the Forum Non Conveniens Doctrine*, 123 Colum. L. Rev. 761, 788 (2023). Narh suggests also that videoconferencing also

aids in the public interest factors, as it undercuts the court-congestion factor.  Narh, *supra.*

For these reasons, many believe that the availability of videoconferencing tends to equalize party conveniences between two forums and lessens the weight given to the rebuttal given against the presumption given to a plaintiff's choice of forum.  *See e.g.* Scott Dodson, *Videoconferencing and Legal Doctrine*, 51 Sw. L. Rev. 9, 17 (2021).  As any plaintiff is the master of their own claim, and the change in the weight given to the rebuttal of the forum choice of a foreign plaintiff, it stands that such foreign plaintiffs should be able to decide where to bring their claims and still receive the "strong presumption" of that choice which the District Court did not afford here.  *See Caterpillar, Inc. v. Williams,* 482 U.S. 392 (1987) (emphasizing principle that a plaintiff remains the master of their claim).

Private interest factors also favor the U.S. as the pertinent documents and FAA regulations are written in English and aviation utilizes a universal language of English for safety reasons. *International Civil Aviation Organization (ICAO)*, <icao.int/safety/OPS/OPS-Tools/Pages/AELTS.aspx>.  Accordingly, all documents pertaining to aircraft maintenance and operation are in English. The Court ignored the voluminous manuals which address the functionality of the weather radar (inoperative on this flight, but required for aircraft airworthiness) which are technical in nature and they too would have to be translated to Spanish should this matter

proceed before a tribunal there. Moving this case to Spain would have the adverse effect of requiring all such documents to be translated to Spanish.

In addition, documentary evidence concerning PA Scale's purchase and ownership of the U.S. Aircraft are present in the U.S., and the Federal Aviation Administration (FAA) holds documents concerning the history of the aircraft in the form of the airworthiness file and registration file.

This Court is convenient for all litigants. There is no need to view the premises where the crash took place, due to the passage of time and its lack of any role in the accident, and the fortuitous nature of the location of an aircraft crash. Moreover, all other factors favor litigation in the U.S.

Further, PA Scale affirmatively said in a sworn declaration by its current CEO that it had no office, employees, business, or operations in Spain (A129-131). Thus, it is nearly impossible that any relevant documents exist in Spain pertaining to PA Scale's operations. If in the unlikely event that any documents exist in Spain pertaining to PA Scale or the Aircraft, and such documents were not destroyed in the post-crash fire, they can be easily transmitted to the U.S. within moments by means of an electronic file transfer. There is no impediment to transferring documents from Spain to the U.S. *See Bank of America Corp*, 385 F. Supp. 2d at 237 (upholding plaintiffs' choice of forum finding that while costs would be incurred

in traveling and transporting materials to New York from Brazil and the Bahamas, such costs did not "appear to place a significant burden on Defendants").

As far as witnesses are concerned, key witnesses for Plaintiffs and Defendant are available in the U.S. Defendant's current CEO, Ms. Malo, has held a business address in New York just a few blocks away from the Court. On behalf of PA Scale, Ms. Malo has submitted PA Scale to the jurisdiction of the District Court and indicated her availability to participate in this case by filing two declarations in this Action. The District Court is not inconvenient for her.

Defendant's president at the time of the accident, David Lucas, is a U.S. citizen and resident of Florida. For Mr. Lucas, New York is far more convenient than Spain to the extent he is called upon to provide evidence relating to his conduct as president of PA Scale when the accident took place.

To the extent the accident investigators are called upon as witnesses, it is doubtful what testimony, if any, would be permitted by governmental investigators, particularly beyond basic facts. *See e.g.* 49 C.F.R. § 835.3 (prohibiting NTSB opinion testimony in litigation). Given the findings in the Official Report that point to numerous errors on the part of PA Scale's CEO, Rafael Malo, it is curious that PA Scale would even consider wanting to elicit more testimony confirming the negligent and reckless acts it allowed to occur. It should be noted that the accident report from the Spanish investigators was prepared in English by the Spanish

government and readily available and is even attached to the Plaintiffs' Amended Complaint. A39-102. Moreover, to the extent appropriate, reasonable accommodations can be made to have investigators deposed by videoconference and to arrange for their attendance at trial as needed.

### B. Public Interest Factors Render the U.S. Convenient

Defendant's contention that the citizens of the U.S. have minimal interest in this case is surprising and wrong. PA Scale is a U.S. company. PA Scale has been operating in this country for over two decades. Its CEO at the time of the aircraft accident took advantage of U.S. laws to form PA Scale in the U.S. and to purchase the Aircraft in the U.S. PA Scale's president at the time of the aircraft accident, David Lucas, resided in the U.S. and continues to reside here. PA Scale's current CEO, Ms. Malo, and director, Ms. Sabet, both have used New York business addresses.

PA Scale was required to abide by U.S. law in the maintenance and operation of the PA Scale Aircraft. U.S. law requires aircraft registered in the U.S. to be owned by a U.S. citizen or to be operated primarily in the U.S. 14 C.F.R. § 47.3. The interest of U.S. citizens in holding this U.S. company accountable for its astounding breach is undeniable. PA Scale's CEO grossly mishandled a U.S. registered aircraft and caused the death of Plaintiffs' decedents

By contrast, Spain has far less interest in the conduct of an American company. Indeed, this lack of interest is reinforced by the absence of PA Scale from the criminal proceeding that has been ongoing for over six years. The Court should disregard Defendant's arguments concerning Spain's purported interest in this litigation as a transparent effort to escape judgment by a U.S. Court for the conduct of a U.S. company. On the contrary, it is not clear whether a judgment in a Spanish tribunal could be enforced against PA Scale, who does not have any presence in Spain. The U.S. absolutely has an interest in holding one of its own companies accountable for the tragic deaths of the Twins and their mother in the U.S. Aircraft.

Finally, as to other factors, the practical considerations of litigating in a foreign jurisdiction which inconveniences the moving party should not be minimized. As noted above, aviation utilizes a universal language of English, and all aircraft checklists, instructions, operating procedures and U.S. regulations would therefore need to be presented in Spanish to a court with little interest in punishing a U.S. corporation for misconduct.

## IV. The District Court Erred in Finding Spain is a Presently Available Alternative Forum

A case cannot be dismissed on forum *non conveniens* grounds "unless there is *presently available* to the plaintiff an alternative forum that will permit it to litigate the subject matter of its dispute." *Norex*, 416 F.3d at 159-60 (emphasis added). The defendant bears the "ultimate burden of persuasion" as to the adequacy of an

35

available forum. *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009) (district court omitted analysis of whether defendant discharged this burden); *see Norex*, 416 F.3d at 159-60 (defendant failed to carry its burden to demonstrate alternate country afforded plaintiff a "presently available adequate forum").

The District Court found Spain is not presently available. Plaintiffs can do nothing to enforce their rights while the Spanish criminal proceeding is underway. A258-269 (Martínez Decl.); *Bank of America Corp.*, 385 F. Supp. 2d at 235, 238 (denying dismissal on forum *non conveniens* grounds where no adequate alternative forum was available). Plaintiffs do not know if and/or when it will become an available forum.

In any event, even if this Court were to find that Spain is an available alternative forum notwithstanding the indefinite delay it presents, the balance of factors weighs heavily in favor of upholding Plaintiffs' choice of forum. The District Court erred when it found that Defendant had met its burden of showing litigation in the United States to be so inconvenient as to warrant dismissal to Defendant's preferred forum of Spain. *See DiRienzo*, 294 F.3d at 33 ("although defendants may have shown Canada to be an appropriate forum, they have not met their burden of proving that litigation in the United States is unnecessarily inconvenient...."); *accord La Seguridad de Centroamerica*, 2002 WL 530979, at *6 (denying dismissal on forum *non conveniens* grounds where defendants failed to show plaintiffs' chosen

forum was "genuinely inconvenient" and foreign forum to be "significantly preferable") (quoting *Iragorri*, 274 F.3d at 74-75); *accord Petra Systems v. Everest Nat'l Ins. Co.*, No. ST-18-cv-615, 2019 WL 1749510, at *10 (V.I. Super. Apr. 16, 2019) (court denies dismissal on forum *non conveniens* grounds, affording plaintiff deference even where another adequate forum was available).

## V.    The District Court Erred in Denying Plaintiffs Discovery to Address Defendant's Forum *Non Conveniens* Contentions

Parties are entitled to obtain discovery regarding any matter which is relevant to the subject matter involved in the pending action. Fed. R. Civ. P. 26(b)(1). Thus, before any dismissal as to forum *non conveniens*, the District Court had the discretion to grant Plaintiffs discovery. *Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir. 1973) (grant and nature of protection with respect to discovery is within the discretion of the trial court). The Court offered no reasons for depriving Plaintiffs of any right to take discovery.

PA Scale contended that discovery was unnecessary and challenged Plaintiffs to articulate the areas in which it was warranted. Plaintiffs did so. Plaintiffs provided the Court with a list of areas with respect to which discovery would assist the Court in understanding the significant connection between PA Scale and the U.S. and minimal connection between PA Scale and Spain.

In granting Defendant dismissal, the Court did not mention the discovery issue. Plaintiffs respectfully submit that this Court may find there to be insufficient

facts on which to support the District Court's dismissal on forum *non conveniens* grounds and that the case should be remanded to permit Plaintiffs to take discovery into the following areas, at a minimum:

- PA Scale's U.S. business and the role played by the Aircraft in those business activities;

- The role played by PA Scale's former president, David Lucas, in overseeing the operation, maintenance and use of the Aircraft before it crashed;

- PA Scale's reasons for transporting the Aircraft to Spain;

- PA Scale's knowledge and awareness of its obligations under U.S. law concerning the Aircraft;

- PA Scale's reason for declining to change the Aircraft's registration to Spain and, instead, keeping it registered with the FAA;

- How PA Scale complied with FAA regulations for ownership and operations of the accident aircraft;

- The financial accounting for the purchase and operational costs of the PA Scale Aircraft; and

- The reason for creating an unsigned, unauthenticated, error-ridden "agreement" between PA Scale and Vazquez Krasnow.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs request that the Order be reversed and that the case be remanded to the District Court for trial; or, in the alternative, for discovery pertaining to forum *non conveniens*, and that the Court grant such other and further relief that the Court deems appropriate.

Dated: November 25, 2024
New York, New York

ALCABES LAW, PLLC

*/s Elisa Alcabes*

Elisa Alcabes, Esq. (EA 5493)
10 Roosevelt Ave.
Larchmont, New York 10538
Tel: (914) 720-5453
Email: elisa.alcabes@gmail.com

and

DEVERS MISKA LAW
Michael S. Miska, Esq.
Cynthia M. Devers, Esq.
Two Bala Plaza, Suite 300
Bala Cynwyd, PA 19004
Tel: (215) 714-4030
Email:  law@dmllc.law
Email:  mmiska@dmllc.law
Email:  cdevers@dmllc.law

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE  REQUIREMENTS AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. 32(e) and Local Rule 32.1(4)(a) because this brief contains 8,535 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the [2024] version of Microsoft Word in 14-point Times New Roman font.

# SPECIAL APPENDIX

i

## TABLE OF CONTENTS

**Page**

Decision and Order of the Honorable Alvin K.
  Hellerstein, dated August 1, 2024, Appealed from          SPA-1

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
MARÍA FERNANDA NADAL GAÑÁN,　　　　　　:
Individually and as proposed co-administrator　　:
of the Estate of Gadea García–Miñaur Fonta　　　:
and the Estate of Mencía García–Miñaur　　　　:
Fonta, and STEVEN N. GARFINKEL, in his　　　:
capacity as proposed co-administrator of the　　　:
Estate of Gadea García–Miñaur Fonta and the　　:
Estate of Mencía García–Miñaur Fonta,　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Plaintiffs,　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　-against-　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
PA SCALE COMPANY OF FLORIDA,　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Defendant.　　　　:
　　　　　　　　　　　　　　　　　　　　　:
------------------------------------------------------------- X

**ORDER GRANTING**
**DEFENDANT'S MOTION TO**
**DISMISS**

23 Civ. 4767 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

　　　　　This case arises out of a deadly aircraft crash in Spain on December 4, 2016, in

which the pilot and three passengers died. The three passengers were the daughter and twin

granddaughters of Plaintiff María Fernanda Nadal Gañán ("Nadal"). Plaintiff Nadal, as an

individual and as proposed co-administrator of the decedent twins' estates, and Plaintiff Steven

N. Garfinkel, as proposed co-administrator of the decedent twins' estates, filed this suit against

Defendant PA Scale Company of Florida, the owner of the aircraft. Defendant moves to dismiss

the First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6), under

the doctrine of *forum non conveniens* and for failure to state a claim. Because Spain is a more

convenient forum, the claims should be tried there; Defendant's motion to dismiss is granted.

## BACKGROUND

On December 4, 2016, a Beechcraft 390 jet aircraft piloted by Defendant PA Scale's CEO and owner, Rafael Malo, departed Madrid, Spain for Cascais, Portugal despite stormy conditions. Malo's girlfriend, María Fernanda Fonta Nadal, and her twin daughters Cadea and Mencia García–Miñaur Fonta, were on board. The aircraft, which was manufactured in the United States and registered and certified by the Federal Aviation Authority, needed to be relocated to a facility in Portugal for repair of its weather radar equipment, which was inoperative at the time of the flight.

As the aircraft climbed to cruising level after take-off, it yawed to the left and suddenly lost altitude. The airspeed fell, the aircraft stalled, and it went into a flat spin, ultimately crashing into the ground. All four occupants of the aircraft were conscious throughout the accident sequence and were killed by post-impact thermal injuries. The aircraft was destroyed by the impact and ensuing fire. Plaintiff Nadal, watching the news at home, saw a live television broadcast of the burning and smoking aircraft, and minutes later received a call informing her that the aircraft she was watching had carried her daughter and granddaughters.

The Spanish government initiated an investigation into the accident, and issued a report on July 2, 2019 detailing the circumstances of the crash, including the inadequate training and lack of licensure of the pilot, the adverse meteorological conditions, and the lack of airworthiness of the aircraft. A criminal proceeding related to the crash has been underway in Spain since 2016.

On September 20, 2017, Plaintiff Nadal signed a release of liability to settle her claims against Vazquez Krasnow, a Spanish entity she was induced to believe owned the aircraft. Unbeknownst to her, Vazquez Krasnow had rented the aircraft from PA Scale in 2010 through a "sham" rental agreement for $250, and PA Scale always remained the owner of the aircraft.

SPA-3

FAC ¶53. After Plaintiffs' Spanish counsel discovered that the aircraft was owned by PA Scale and could be subject to suit in the United States, Plaintiffs filed this action on June 6, 2023.

### DISCUSSION

"[F]orum non conveniens is a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000) (quotation omitted). In *Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001) (en banc), the Second Circuit described a three-step procedure for evaluating *forum non conveniens* motions. "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum." *Norex Petroleum, Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri*, 274 F.3d at 73–74).

The first step requires me to determine how much deference to give Plaintiffs' selection of this forum for their suit. "Any review of a forum non conveniens motion starts with 'a strong presumption in favor of the plaintiff's choice of forum.'" *Id.* at 154 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). However, this presumption is only an entry point on a "sliding scale," in which more deference is due if the choice was "dictated by reasons that the law recognizes as valid," and less deference is due if the choice was more likely "motivated by forum-shopping reasons." *Iragorri*, 274 F.3d at 71–72. Courts in this Circuit regularly accord less deference to plaintiff's chosen forum where the plaintiffs are foreign and the operative facts "bear little connection to the chosen forum." *In re Alcon Shareholder Litig.*, 719 F. Supp. 2d 263, 269 (S.D.N.Y. 2010); *see Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003).

3

I find that Plaintiffs' choice of forum deserves little deference.  Plaintiffs, as legal representatives of the decedents' estates, are Spanish citizens because the decedents were Spanish citizens.  *See* 28 U.S.C. § 1332(c)(2).  Defendant is incorporated in Florida, and though it has not moved to dismiss on personal jurisdiction grounds and listed New York as principal place of business in a 2022 filing, Plaintiffs point to no bona fide connections of the Defendant, or this action, to this forum.  *See Pollux Holding Ltd.*, 329 F.3d at 74.  Plaintiffs argue that the aircraft was manufactured, purchased, and registered in the United States, making suit in the United States convenient.  However, those contacts are relevant to a products liability case, of which this case is not.  Their claims involve PA Scale's operations in Spain; the aircraft took off from a Spanish airport, crashed in Spain, was leased to a Spanish company, was piloted by a Spanish citizen flying Spanish passengers, and the accident was investigated by Spanish authorities.  The witnesses and evidence most relevant to these operations and injuries are in Spain, not in New York or the United States.  *Iragorri*, 274 F.3d at 72 (listing, as factors to consider, "convenience of the plaintiff's residence in relation to the chosen forum" and "availability of witnesses or evidence to the forum district").  Taken together, Plaintiffs have failed to demonstrate that New York, or the United States, is convenient for them and that they are entitled to substantial deference.  *See Aenergy, S.A. v. Republic of Angola*, 31 F.4th 119, 128 (2d Cir. 2022).

The second step requires me to determine whether Spain is adequate.  Defendant, which bears the burden of establishing that an adequate alternative forum exists, argues that Spain is a viable option because it is amenable to service of process there, and Spain permits litigation of the subject matter at issue.  *See Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009); *Piper Aircraft Co.*, 454 U.S. at 250.  Plaintiffs argue that Spain is not "available,"

because Spanish law requires the stay of civil claims while criminal proceedings arising out of

the same events are pending.  However, as other district courts have ruled, potential delays from

needing to await the entry of judgment in a pending criminal proceeding does not render Spain

an unavailable forum.  *In re Air Crash at Madrid, Spain, on August 20, 2008*, 893 F. Supp. 2d

1020 (C.D. Cal. 2011), *amended on reconsideration in part on other grounds, aff'd sub nom.*

2011 WL 2183972 (C.D. Cal. May 16, 2011); *Broadcasting Rights Int'l Corp. v. Societe du Tour

de France, S.A.R.L.*, 708 F. Supp. 83, 86 (S.D.N.Y. 1989) ("The French proceeding remains

adequate, even if the criminal charge stays the civil process."); *see Lazare Kaplan Int'l Inc. v.

KBC Bank, N.V.*, 337 F. Supp. 3d. 274, 301 n.8 (S.D.N.Y. 2018).

   The third step requires me to consider both the private and public interest factors

and make an ultimate determination as to convenience.   The private interest factors include: (1)

ease of access to evidence; (2) the availability of compulsory process for the attendance of

unwilling witnesses; (3) the cost of willing witnesses' attendance; (4) the possibility for a view

of the premises; and (5) all other factors that might make the trial quicker or less expensive.  *Gulf

Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Piper Aircraft Co.*, 454 U.S. at 241 n.6.  The

public interest factors consider the burdens and interests of the relevant fora in exercising

jurisdiction over the dispute, including (1) administrative difficulties relating to court congestion;

(2) the potential burden of jury duty on a community that has no relation to the litigation or

parties; (3) the interest in having local disputes settled locally; and, (4) avoiding problems

associated with applying foreign law. *See Iragorri*, 274 F.3d at 74.

   I find that these interests clearly favor dismissal in favor of proceeding in Spain.

Given the tort theories upon which Plaintiffs are seeking relief, evidence and witnesses

pertaining to the aircraft, its maintenance, inspection, and the subsequent investigation will be

SPA-6

indispensable to litigating the claims. Plaintiffs do not meaningfully contest Defendant's point

that the relevant witnesses, including the plane maintenance crew, inspection crew, the current

and former aviation technicians and engineers involved in conducting the technical inspect and

servicing and maintained the aircrafts involved in the accident, and damages witness, are in

Spain, and will likely require Spanish interpreters. Likewise, the aircraft wreckage is in Spain,

along with the liability-related documents, which could require translation. Litigating this case

in the United States would present a variety of hardships for both sides, given the dearth of U.S.-

based plaintiffs, decedents, witnesses, and evidence. Additionally, the Spanish government's

own investigation of the crash, and the likely application of Spanish law to an indeterminate

number of issues in the case, including the settlement agreement between Plaintiff Nadal and

Vazquez Krasnow, show a public interest in favor of Spain as the proper forum for the dispute.

### CONCLUSION

For the reasons above, Defendant's motion to dismiss on the grounds of *forum*

*non conveniens* is granted, provided that: (1) Defendant consents to jurisdiction and to accept

process in any suit plaintiffs file in Spain on claims that arise out of the facts of the instant suit;

and (2) Defendant waives any statute of limitations defenses that may be available to them in

Spain that arose on or after the date of this lawsuit, provided that litigation is pursued in Spain in

a reasonable period of time. Plaintiff may reopen this case within thirty days if either provision

is disregarded. The Clerk of Court is directed to terminate all open motions and close this case.

SO ORDERED.

Dated:    August 1, 2024
          New York, New York

ALVIN K. HELLERSTEIN
United States District Judge